Nos. 16-1200 & 16-1201
(consolidated)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

UNITED STATES OF AMERICA
                                                    Appellant

v.

CAROLYN JACKSON and JOHN JACKSON,

Appeals from the Final Judgments in a Criminal Case of the United
States District Court for the District of New Jersey (Crim. No.
13-290).   Sat Below: Honorable Katharine S. Hayden, U.S.D.J.

_____

CORRECTED REDACTED REPLY BRIEF FOR APPELLANT
THE UNITED STATES OF AMERICA

_____

PAUL J. FISHMAN
United States Attorney
Attorney for Appellant
970 Broad Street
Newark, New Jersey 07102-2535
(973) 645-2700

On the Brief:

JOHN F. ROMANO
Assistant U.S. Attorney
(973) 645-2866

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

TABLE OF ABBREVIATIONS ......................................................................x

PRELIMINARY STATEMENT.......................................................................1

ARGUMENT ...........................................................................................4

POINT I      THE ASSAULT GUIDELINES ARE SUFFICIENTLY ANALOGOUS TO
             SEVERAL COUNTS OF CONVICTION .......................................4

    A.       An elemental "match" is unnecessary for a Guideline to be
             "sufficiently analogous." ........................................................4

        1.       "Offense conduct" includes the facts undergirding the
                 convictions ...................................................................5

        2.       The jury found that Defendants physically assaulted their
                 adopted children and forced them to ingest painful substances,
                 so the assault Guidelines are sufficiently analogous ..................7

        3.       Even if this Court looks to the elements, Defendants are
                 wrong that the elements of child endangerment must
                 "match" the elements of federal assault....................................9

    B.       Defendants Cannot Defend The District Court's Bases For
             Finding No Sufficiently Analogous Guideline ...................................14

    C.       The Error Was Not Harmless ...............................................16

POINT II     DEFENDANTS CANNOT DEFEND THE COURT'S REFUSAL TO FIND
             AGGRAVATING FACTS BY A PREPONDERANCE .....................................18

POINT III    ACA IS NOT A LICENSE TO IGNORE THE GUIDELINES OR FEDERAL
             SENTENCING POLICIES.........................................................22

i

POINT IV     SENTENCES OF 24 MONTHS AND PROBATION ARE
             UNREASONABLE ...................................................................................26

CONCLUSION .........................................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

Alleyne v. United States,
    133 S. Ct. 2151 (2013) ...........................................................................19

Emich Motors Corp. v. Gen. Motors Corp.,
    340 U.S. 558 (1951) ................................................................................8

Jones v. United States,
    526 U.S. 227 (1999) ..............................................................................19

Lewis v. United States,
    523 U.S. 155 (1998) ..............................................................................12

Molina-Martinez v. United States,
    136 S. Ct. 1338 (2016) ....................................................................16, 17

Prudential Ins. Co. v. Sipula,
    776 F.2d 157 (7th Cir. 1985) ................................................................28

State v. Abdullah,
    878 A.2d 746, 184 N.J. 497 (2005) ......................................................23

State v. Molina,
    775 A.2d 509, 168 N.J. 436 (2001) ......................................................23

State v. N.A.,
    809 A.2d 825, 355 N.J. Super. 143 (App. Div. 2002) .........................13

State v. Yarbough,
    498 A.2d 1239, 100 N.J. 627 (1985) ...................................................23

Sturm v. Ulrich,
    10 F.2d 9 (8th Cir. 1925) ......................................................................11

United States v. Ali,
    508 F.3d 136 (3d Cir. 2007)...........................................................18, 21

United States v. Allard,
   164 F.3d 1146 (8th Cir. 1999) ............................................................................11

United States v. Almeida,
   710 F.3d 437 (1st Cir. 2013)..................................................................................7

United States v. Arroyo-Jaimes,
   608 Fed. Appx. 843 (11th Cir. 2015)...................................................................21

United States v. Batchelder,
   442 U.S. 114 (1979).............................................................................................29

United States v. Begin,
   696 F.3d 405 (3d Cir. 2012)................................................................................25

United States v. Boney,
   769 F.3d 153 (3d Cir. 2014)............................................................................6, 16

United States v. Booker,
   543 U.S. 220 (2005)..............................................................................2, 21, 26

United States v. Bungar,
   478 F.3d 540 (3d Cir. 2007)................................................................................26

United States v. Castleman,
   134 S. Ct. 1405 (2014).........................................................................................8

United States v. Cothran,
   286 F.3d 173 (3d Cir. 2002)................................................................................14

United States v. Davis,
   845 F.2d 94 (5th Cir. 1988) ................................................................................24

United States v. Dawn,
   129 F.3d 878 (7th Cir. 1997) ..............................................................................15

United States v. Delis,
   558 F.3d 177 (2d Cir. 2009).................................................................................8

United States v. Dotson,
   615 F.3d 1162 (9th Cir. 2010) ............................................................................23

iv

United States v. Dunn,
    545 F.2d 1281 (10th Cir. 1976) ...........................................................................3

United States v. Finley,
    531 F.3d 288 (4th Cir. 2008) ..............................................................................12

United States v. Freeman,
    763 F.3d 322 (3d Cir. 2014).................................................................................15

United States v. Gamez,
    301 F.3d 1138 (9th Cir. 2002) .............................................................................15

United States v. Gaskell,
    134 F.3d 1039 (11th Cir. 1998) .....................................................................3, 24

United States v. Goff,
    501 F.3d 250 (3d Cir. 2007)..........................................................................26, 27

United States v. Gonzalez,
    462 F.3d 754 (7th Cir. 2006) ..............................................................................14

United States v. Gonzalez,
    940 F.2d 1413 (11th Cir. 1991) ............................................................................9

United States v. Grier,
    475 F.3d 556 (3d Cir. 2007)........................................................2, 15, 18, 19

United States v. Griffith,
    115 F. Supp. 3d 726 (S.D. W. Va. 2015)...............................................................6

United States v. Hoffecker,
    530 F.3d 137 (3d Cir. 2008)..........................................................................1, 19

United States v. Holbert,
    285 F.3d 1257 (10th Cir. 2002) .............................................................................6

United States v. King,
    824 F.2d 313 (4th Cir. 1987) ..............................................................................24

United States v. Klups,
    514 F.3d 532 (6th Cir. 2008) ..............................................................................21

United States v. Langley,
919 F.2d 926 (5th Cir. 1990) ...............................................................11

United States v. Lewis,
802 F.3d 449 (3d Cir. 2015)...............................................................19

United States v. Lychock,
578 F.3d 214 (3d Cir. 2009)...............................................................27

United States v. Martinez,
274 F.3d 897 (5th Cir. 2001) ..............................................................24

United States v. McCaleb,
552 F.3d 1053 (9th Cir. 2009) ..............................................................9

United States v. McNair,
254 Fed. Appx. 246 (4th Cir. 2007)....................................................12

United States v. Merced,
603 F.3d 203 (3d Cir. 2010)...............................................................25

United States v. Napolitan,
762 F.3d 297 (3d Cir. 2014)...............................................................14

United States v. Navarro,
289 Fed. Appx. 724 (5th Cir. 2008)............................................12, 21

United States v. Nichols,
169 F.3d 1255 (10th Cir. 1999) ..........................................................15

United States v. Overstreet,
713 F.3d 627 (11th Cir. 2013) ............................................................20

United States v. Passarella,
460 Fed. Appx. 145 (3d Cir. 2012).....................................................21

United States v. Press Publ'g Co.,
219 U.S. 1 (1911)........................................................................3, 24

United States v. Pressler,
256 F.3d 144 (3d Cir. 2001)..............................................................6, 8

United States v. Queensborough,
   227 F.3d 149 (3d Cir. 2000)...................................................................24

United States v. Rahman,
   189 F.3d 88 (2d Cir. 1999)...................................................................15

United States v. Rakes,
   510 F.3d 1280 (10th Cir. 2007) ......................................................9, 15

United States v. Rebmann,
   321 F.3d 540 (6th Cir. 2003) ...............................................................6

United States v. Reed,
   734 F.3d 881 (9th Cir. 2013) ..............................................................23

United States v. Reyes,
   48 F.3d 435 (9th Cir. 1995) ................................................................12

United States v. Rivera-Cruz,
   401 Fed. Appx. 677 (3d Cir. 2010)......................................................18

United States v. Robinson,
   778 F.3d 515 (6th Cir. 2015) ..............................................................29

United States v. Sain,
   795 F.2d 888 (10th Cir. 1986) ............................................................23

United States v. Schneider,
   801 F.3d 186 (3d Cir. 2015)................................................................14

United States v. Serpico,
   320 F.3d 691 (7th Cir. 2003) ..............................................................15

United States v. Sharpnack,
   355 U.S. 286 (1958).............................................................................23

United States v. Smith,
   751 F.3d 107 (3d Cir. 2014)................................................................18

United States v. Taylor,
   98 F.3d 768 (3d Cir. 1996)...................................................................6

United States v. Terry,
    86 F.3d 353 (4th Cir. 1996) ...................................................................6

United States v. Tidwell,
    521 F.3d 236 (3d Cir. 2008).................................................................18

United States v. Tomko,
    562 F.3d 558 (3d Cir. 2009)..................................................................27

United States v. Williams,
    260 Fed. Appx. 444 (3d Cir. 2008) ......................................................15

United States v. Wright,
    642 F.3d 148 (3d Cir. 2011)..................................................................16

United States v. Zabielski,
    711 F.3d 381 (3d Cir. 2013)..................................................................16

## **Statutes**

18 U.S.C. § 13(a) ....................................................................................24

18 U.S.C. § 3551 ...................................................................................3, 24

18 U.S.C. § 3553 ...............................................................................passim

18 U.S.C. § 3731 .......................................................................................5

18 U.S.C. § 3742 ................................................................................13, 26

N.J.S.A. 2C:43-6(b) .................................................................................23

Pub. L. No. 101-647.................................................................................24

## Sentencing Guidelines

U.S.S.G. § 1B1.1(a)(2)........................................................................................14

U.S.S.G. § 1B1.2(a) ......................................................................................4, 5, 6

U.S.S.G. § 1B1.3........................................................................................14

U.S.S.G. § 2A2.3(c)(1) ..........................................................................14, 15

U.S.S.G. § 2A2.4(c)(1) ........................................................................15

U.S.S.G. § 2K2.1(c)(1) ........................................................................15

U.S.S.G. § 2X5.1........................................................................................20

U.S.S.G. § 3A1.2........................................................................................15

U.S.S.G. § 4B1.2........................................................................................6

U.S.S.G. § 6A1.3........................................................................................21

## TABLE OF ABBREVIATIONS

"A"                           refers to the Sealed Appendix supplied by the United States.

"CJRB" & "JJRB"               refers to the Response Briefs of Carolyn Jackson and John Jackson, respectively.   Each defendant joins the other's arguments. <u>See</u> CJRB26 n.24; JJRB14 n.1.

"CJSA" & "JJSA"               refers to the Supplemental Appendices of Carolyn Jackson and John Jackson, respectively.

"GB"                          refers to the Government's opening brief.

## PRELIMINARY STATEMENT

Defendants, Carolyn and John Jackson, left in their wake one dead toddler, one who almost died, twice, and another who survived by stealing food and drinking from the toilet.   The Government's brief explained that the sentences imposed on Defendants for abusing and neglecting those defenseless children were unreasonably low and the product of several fundamental errors.   Defendants respond by ignoring their conduct (which was overwhelmingly shown during a 39-day trial), pointing to snippets of evidence that allegedly exonerate them (despite the jury's guilty verdicts), and doubling down on each of the District Court's mistakes.   Indeed, reading Defendants' responses, "one might wonder what had been going on here and what [Defendants] did to warrant [their] convictions." United States v. Hoffecker, 530 F.3d 137, 146 n.1 (3d Cir. 2008).

According to Defendants, their conduct was no big deal because parents assault their children "every day." CJRB28.   C███ supposedly suffered nearly-impossible sodium levels because she drank too much milk. CJRB5.   Yet, at 24 months, she weighed as much as a 4-month-old baby.   And never mind her weed-like growth upon leaving Defendants' care, or the marks covering her body. A6758-74.   Meanwhile, Joshua apparently suffered a dizzying array of serious injuries "spontaneous[ly]" and because of "cod liver oil." CJRB3, 23.   Never mind his broken bones, brain injury, partially-amputated gangrenous finger, pervasive

scarring, or grotesquely peeling skin.   And J███ is barely mentioned in Defendants'

responses.   Apparently drinking from the toilet and desperately stealing food are

too mundane to discuss.

Defendants also defend their sentences by repeating the mistaken

refrain—adopted as a fundamental basis for the District Court's reasoning—that

nothing bad happened because the children's treating physicians did not document

or report abuse, and, if they did, it was "unfounded." JJRB7-10, 48; CJRB2, 6.   But

as the evidence shows, there was nothing unfounded about the abuse here.   And,

contrary to Defendants' claims, several treating physicians reported abuse or had

serious concerns about it even though Defendants had lied to them to cover up these

crimes. GB57-59.   Indeed, the abuse finally ended when a doctor saw C███ and, of

the thousands of children he had ever treated, was reminded of just one—Joshua.

Although Defendants run from their conduct, they wholeheartedly embrace

the District Court's rulings and rationales at every turn.   Thus, according to

Defendants, a judge cannot make factfindings at sentencing, even where those facts

do *not* increase the statutory minimum or maximum sentences. CJRB36-41.   Never

mind the remedial opinion in United States v. Booker, 543 U.S. 220 (2005), or this

Court's many precedents, including United States v. Grier, 475 F.3d 556 (3d Cir.

2007) (en banc).   And according to Defendants, ACA *requires* federal district

courts to impose sentences "**in the way and to the extent**" punishable by the state.

2

CJRB14-15 (quoting United States v. Press Publ'g Co., 219 U.S. 1, 10 (1911)).[1]
Never mind that the version of the statute at issue there was superseded in *1909*,
United States v. Gaskell, 134 F.3d 1039, 1042 n.5 (11th Cir. 1998), or that *26 years
ago* Congress definitively "resolved this issue" by providing that ACA cases should
be sentenced pursuant to federal sentencing policies and the Sentencing Guidelines,
U.S.S.G. app. C, amend. 412 (Nov. 1, 1991); see 18 U.S.C. § 3551.

Although Defendants might not like it, JJRB2, 48, the mountain of evidence,
including the horrific photographs and astonishing growth charts, A6747-88,
confirm that this was "a torture case of 3 children," A6360, not, as the District Court
would have it, a matter of "poor parenting choices," A6708.   Try as Defendants
might, no amount of good behavior in court, "God-fearing" friends, and military
awards can justify the sentences imposed in this case. JJRB51-53; CJRB51.
Because the Court committed numerous errors, and imposed sentences that were
unreasonably low, this Court should vacate the judgments and remand for
resentencing.

---

[1] John's brief contains the same quote from a Tenth Circuit opinion, JJRB36,
which is ultimately derived from Press Publishing, see United States v. Dunn, 545
F.2d 1281, 1282 (10th Cir. 1976).

<u>ARGUMENT</u>

POINT I

**THE ASSAULT GUIDELINES ARE SUFFICIENTLY ANALOGOUS TO SEVERAL COUNTS OF CONVICTION.**

Defendants claim that the assault Guidelines are not sufficiently analogous to counts of conviction charging that they endangered their children by "physically assaulting" them "with various objects and with their hands," and "forcing" them to ingest hot sauce. GB29-30; <u>see</u> CJRB26-49; JJRB14-29.   According to Defendants, this is so because the elements of child endangerment do not "match" those of federal assault. CJRB33.   They further claim that it would "offend fairness" to sentence them under the assault Guidelines, because the Government opposed their proposed jury charge on harm and therefore using those Guidelines would constitute a "bait-and-switch." CJRB18-20, 30-48.   Finally, they argue that any error was harmless, CJRB49, even though it resulted in unstated downward variances of over *15½ years*.   They are wrong.

**A.    An elemental "match" is unnecessary for a Guideline to be "sufficiently analogous."**

Courts use two different methods for determining whether there is a sufficiently analogous offense guideline for ACA convictions: (1) comparing offense Guidelines to the "offense conduct charged in the count of the indictment or information of which the defendant was convicted," U.S.S.G. § 1B1.2(a); or

(2) comparing the elements of the crime of conviction with the elements of the offenses listed in the statutory index.   The Government established that the assault Guidelines are sufficiently analogous to Defendants' convictions on Counts 1, 3, 5, 6, 9, 10,[2] and 12 (the "commission counts") under either approach. GB29-37.

Defendants argue that the assault Guidelines cannot be sufficiently analogous here because the elements of child endangerment as charged in the commission counts "simply do not match up" with the elements of federal assault. CJRB30, 33, 36; JJRB14-29.   They further assert that it is inappropriate to look at offense conduct and irrelevant that the jury repeatedly answered "guilty" when asked if Defendants "physically assaulted" their children and "forc[ed]" them to ingest hot sauce. A5963-67, 6054-61; <u>see</u> CJRB33-36; JJRB20-26, 27 n.6.   They are wrong.

### 1.     "Offense conduct" includes the facts undergirding the convictions.

Defendants argue that § 1B1.2(a) "focus[es] exclusively on the *elements* of" the offense of conviction and is an "elements-based inquiry." JJRB14-29.   They point to nothing in § 1B1.2(a), however, supporting that repeated assertion.   As Defendants correctly note, "§ 1B1.2 provides clear instructions for determining which, if any, guideline applies to an offense of conviction." JJRB14.   It provides:

---

[2] John was acquitted on Count 10.   He claims that he was "acquitted of federal assault." JJRB1, 13.   The jury, however, never considered those counts because the Court granted judgments of acquittal during trial, a decision the Government could not appeal. A5439-44; <u>see</u> 18 U.S.C. § 3731.

"Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (i.e., *the offense conduct charged in the count of the indictment or information of which the defendant was convicted*)." U.S.S.G. § 1B1.2(a) (emphasis added).   Indeed, § 1B1.2(a) never uses the word "elements."

Moreover, Defendants' argument that "offense conduct" means "elements," and not the actual allegations in the count of conviction, is contradicted by the cases they cite. JJRB17-19.   For example, in United States v. Pressler, 256 F.3d 144, 158 n.7 (3d Cir. 2001), this Court explained that "offense of conviction" includes "the facts undergirding the specific offense for which the defendant was convicted." United States v. Griffith, 115 F. Supp. 3d 726, 733-34 (S.D. W. Va. 2015), and the cases it cites agree. E.g., United States v. Rebmann, 321 F.3d 540, 543-44 (6th Cir. 2003) ("'[O]ffense of conviction' describes only the precise conduct constituting the crime for which the defendant was convicted, and does not include non-offense relevant conduct."); United States v. Holbert, 285 F.3d 1257, 1261 n.3 (10th Cir. 2002) ("offense of conviction" includes "facts immediately related to the specific offense for which the defendant was convicted"); cf. United States v. Taylor, 98 F.3d 768, 770-74 (3d Cir. 1996) (applying similar language in U.S.S.G. § 4B1.2 cmt. n.2).   Thus, in United States v. Boney, 769 F.3d 153, 160-63 (3d Cir. 2014), this Court "look[ed] at the conduct charged" in the indictment in finding that the district court had chosen the incorrect offense Guideline.   And in United States v. Terry, 86

6

F.3d 353, 357-58 (4th Cir. 1996), the Fourth Circuit looked to the allegations in the counts of conviction in selecting an analogous offense Guideline in an ACA case.[3]

Therefore, to determine whether there is a sufficiently analogous offense Guideline, courts compare the offense conduct charged in the indictment with the offense Guidelines, in search of those within the ballpark of the crime of conviction. GB29; see United States v. Almeida, 710 F.3d 437, 441-42 (1st Cir. 2013) (compare Guidelines with charged misconduct as described in the indictment).   The assault Guidelines meet that standard.

### 2. The jury found that Defendants physically assaulted their adopted children and forced them to ingest painful substances, so the assault Guidelines are sufficiently analogous.

Defendants admit that "assault" is "one of many means of violating" the child endangerment statute. JJRB15.[4]   Yet they contend that the assault Guidelines are

---

[3] Defendants rely on Guidelines Amendment 591, JJRB18-19, which foreclosed the use of offense Guidelines not listed in the statutory index and prohibited sentencing courts from determining the applicable offense Guideline "based on factors other than the conduct charged in the offense of conviction," U.S.S.G. app. C, amend. 591 (Nov. 1, 2000).   But in ACA cases, the statutory index does not list applicable Guidelines, and, notwithstanding Defendants' suggestion, JJRB21 & n.2, the Government never argued that relevant conduct bears on selecting the initial offense level under § 1B1.2(a).

[4] The statute can be violated in ways that do not sound in assault and therefore do not implicate the assault Guidelines. GB25-26.   But many offenses can be committed in numerous ways, which is why the Commission frequently assigns multiple offense Guidelines to statutes. GB32.   Were the Commission to assign

not sufficiently analogous to the commission counts because "an explanation of

'assault' was not given to the jury," which supposedly did not have to find either an

assault or battery to convict. CJRB33; <u>see</u> JJRB27 n.6.   Their arguments miss the

mark.

It is hard to envision violations of the child endangerment statute that sound

more in assault.   The jury found that Defendants endangered their adopted children

by "physically assaulting" them "with various objects and with their hands" and

"forcing" them to ingest hot sauce. GB29-30; <u>see</u> CJSA60, 92 (conceding that

Counts 3, 6, and 12 "dealt with assaultive conduct").   Those are "the facts

undergirding" Defendants' convictions. <u>Pressler</u>, 256 F.3d at 158 n.7.   Because

Defendants did not challenge these convictions on variance grounds and do not

appeal their sufficiency, those findings control. <u>Cf.</u> <u>Emich Motors Corp. v. Gen.</u>

<u>Motors Corp.</u>, 340 U.S. 558, 568-69 (1951) ("In the case of a criminal conviction

based on a jury verdict of guilty, issues which were essential to the verdict must be

regarded as having been determined by the judgment.").   Hitting children and

forcing them to ingest painful substances unquestionably sound in assault, <u>see</u>

<u>United States v. Castleman</u>, 134 S. Ct. 1405, 1414-15 (2014); <u>United States v. Delis</u>,

558 F.3d 177, 179-84 (2d Cir. 2009), and therefore the assault Guidelines fall

---

offense Guidelines to the New Jersey child endangerment statute, it is hard to argue
that the assault Guideline would not be included.

"within the ballpark" of the offense conduct charged in the commission counts,

United States v. Rakes, 510 F.3d 1280, 1287 (10th Cir. 2007).

That "an explanation of 'assault' was not given to the jury," CJRB28, 33;

JJRB27 n.6, is beside the point.   As explained in **Part A.3**, the assault Guidelines

apply to numerous non-assault statutes.   In none of those cases, therefore, would the

jury be instructed on, or required to find, "assault." E.g., 3d Cir. Model Crim. Jury

Instruction 6.18.1512A2.   Moreover, Defendants conceded that the allegations

were not confusing and that no additional instructions were necessary: "where a

child was hit, assaulted.   That's pretty obvious.   The jury I don't think can

misunderstand that." A5490 (counsel for Carolyn); see United States v. McCaleb,

552 F.3d 1053, 1059 (9th Cir. 2009); United States v. Gonzalez, 940 F.2d 1413,

1427 (11th Cir. 1991) ("[T]erms which are within the common understanding of the

jury need not be defined in the jury instructions.").

### 3.   Even if this Court looks to the elements, Defendants are wrong that the elements of child endangerment must "match" the elements of federal assault.

Even if this Court compares the elements of the crime of conviction with

those of the offenses listed in the statutory index, the assault Guidelines are still

sufficiently analogous. GB31-37.[5]   Defendants disagree, arguing that the elements

---

[5] In advocating for this method, CJRB33; JJRB20-24, Defendants ignore the
Government's arguments as to why it should not be adopted, including its lack of

9

of child endangerment as charged in the commission counts "simply do not match up" with the elements of federal assault. CJRB30, 33, 36; JJRB14-29.   In support, they rely heavily on the parties' disagreements regarding a proposed jury instruction and an unpublished Fifth Circuit opinion. CJRB2, 12, 18-20, 24, 30-36, 39; JJRB2, 15, 25-29, 34.   They also claim that "the elements" of all the counts "were precisely the same," and therefore the commission counts can be distinguished from the omission counts only "by reference to actual conduct." JJRB5, 26-27.   They are wrong.

Initially, the elements of each of the endangering counts were *not* "precisely the same." JJRB5, 26.   On all but one of the substantive commission counts the jury was instructed that it had to find that Defendants inflicted *cruelty*. A6021, 6023-24, 6027, 6030.   On the remaining substantive counts, including Count 10 and the omission counts, the jury was instructed that it could find that Defendants either inflicted cruelty or neglected the child. A6019, 6022, 6025-26, 6028-29, 6031. Thus the counts can be distinguished by more than just "conduct." JJRB26.

Next, Defendants are wrong that the elements of child endangerment must "match up" with those of federal assault.   Defendants argue that second-degree child endangerment requires a legal relationship between the defendant and the

_____

textual support, contrary indications in the Guidelines, and risk of excluding sufficiently analogous Guidelines, GB31-33.

victim, whereas federal assault does not, and assault requires an "assault" whereas child endangerment can be committed in multiple ways. CJRB29-30, 33-36; JJRB25-29.

But the assault Guidelines apply to no less than *41* different statutory sections, some of which are *not* assault statutes. GB34.   Defendants' comparison of child endangerment to federal assault, therefore, ignores many non-assault statutes which are also covered by the assault Guidelines.

And "'[a]nalogy does not mean identity.   It implies difference.'" United States v. Langley, 919 F.2d 926, 931 (5th Cir. 1990) (quoting Sturm v. Ulrich, 10 F.2d 9, 11 (8th Cir. 1925)).   Indeed, in ACA cases, the underlying crime *cannot* perfectly match a federal one, otherwise assimilation would be improper and § 2X5.1's discussion of assimilated crimes would be superfluous. GB28 n.13.   That is why courts have stressed that "analogous guidelines do not and need not perfectly match the defendant's crime." United States v. Allard, 164 F.3d 1146, 1149 (8th Cir. 1999).

Unsurprisingly then, courts have *not* required perfect elemental matches. GB35-36.   In Allard, for example, the Eighth Circuit held that the involuntary manslaughter Guideline was properly used in a vehicular battery case where the victim survived. Allard, 164 F.3d at 1147-49.   Defendants do not discuss the holding of that case, much less distinguish it, nor do they meaningfully discuss the

many opinions applying the assault Guidelines to child abuse statutes, or that the Supreme Court linked assault to child abuse in <u>Lewis v. United States</u>, 523 U.S. 155, 171 (1998). GB36.[6]

Instead, Defendants rely heavily on the litigating position of another United States Attorney's Office in <u>United States v. Loften</u>.[7]  That USAO, however, made the same mistake that Defendants make here, pointing to distinctions between a Texas statute and federal assault statutes. <u>See</u> Brief for Appellee, <u>United States v. Loften</u>, 2010 WL 6190563, at *30-35 (5th Cir. 2010).  Those differences are what made it permissible to assimilate that Texas statute under ACA in the first place. <u>See id.</u> at *18-25.  Those same differences, however, should not have precluded a finding that the assault Guidelines were sufficiently analogous.

Regardless, Defendants can point to nothing binding the Government in this case to another USAO's mistaken view as an appellee of how the Guidelines apply to a Texas statute.[8]  In fact, the Solicitor General personally approved the

---

[6] The bulk of ACA cases finding no sufficiently analogous offense Guideline are for driving-related convictions, which have no analogue in the Guidelines or federal law. <u>E.g.</u>, <u>United States v. Finley</u>, 531 F.3d 288 (4th Cir. 2008); <u>United States v. Navarro</u>, 289 Fed. Appx. 724 (5th Cir. 2008); <u>United States v. McNair</u>, 254 Fed. Appx. 246 (4th Cir. 2007); <u>United States v. Reyes</u>, 48 F.3d 435 (9th Cir. 1995).

[7] Reliance on the <u>Loften</u> opinion itself is misplaced. GB40.

[8] Defendants' complaint that the Government's position is dictated by the severity of the sentence is incorrect. JJRB28-29.  In both cases, the courts could

Government's position here. 18 U.S.C. § 3742(b).   And while Defendants trumpet

the position taken by another office applying a completely different statute in a

different case, they omit that they conceded, *in this very case*, that the assault

Guideline was analogous. A6083-84 (Carolyn's counsel: "Analogous offense is

what they call a minor assault."); JJSA8, 11 ("the assault guideline should apply").[9]

Defendants also incorrectly focus on the jury charge dispute, arguing that the

jury did not "find the extent of the injuries suffered by the children," and therefore

there was no finding of "any significant injury" as required by the "aggravated

assault guideline." CJRB20, 35, 39; see JJRB15, 34.[10]   But neither assault nor the

assault Guideline require any bodily injury, much less a significant one. GB38-39.

And the aggravated assault Guideline can be applied in this case via the assault

Guideline's cross-reference, which is triggered by Defendants' "conduct," including

---

sentence anywhere within the statutory ranges.   And in neither case could the
Government know whether the sentences would be above, within, or below the
Guidelines range that would result from use of the assault Guidelines.   Just because
there are no analogous Guidelines does *not* mean that the sentence necessarily must
be lower than if there are such Guidelines.

[9]  Section 2A2.3 was previously titled "Minor Assault." U.S.S.G. app. C, amend.
781 (Nov. 1, 2014).

[10]  Defendants wrongly assert that they did not reject the Government's proposed
interrogatories. CJRB19 n.20.   Counsel explicitly argued that he did not want "the
bifurcation the government is asking for," but instead wanted the Court to instruct
that the offense without the extraneous finding of harm was a "lesser included
offense." A5469.   But that proposal was incorrect under New Jersey law. See State
v. N.A., 355 N.J. Super. 143, 151-54 (App. Div. 2002).

13

relevant conduct and other facts found by the *judge* using the *preponderance* standard. U.S.S.G. §§ 1B1.1(a)(2), 1B1.3, 2A2.3(c)(1); <u>United States v. Schneider</u>, 801 F.3d 186, 204-05 (3d Cir. 2015) (in applying cross-reference, "the District Court was correct to consider all of Schneider's acts" and "all harm that resulted from those acts"); <u>see</u> **Point II**.   Defendants' insistence on having the jury charged as to a non-element was wrong, and they cannot get a sentencing windfall based on the Court's proper rejection of that request.

## B. Defendants Cannot Defend The District Court's Bases For Finding No Sufficiently Analogous Guideline.

Defendants also defend on other erroneous grounds the Court's refusal to find a sufficiently analogous offense Guideline.   For example, they argue that finding an analogous Guideline here requires unconstitutional factfinding and offends the "like punishment" provision of ACA. CJRB24, 26, 30-31, 36-48.   As explained in **Points II and III**, those arguments are meritless.   In any event, the selection of an analogous Guideline is a legal issue, <u>United States v. Cothran</u>, 286 F.3d 173, 176-77 (3d Cir. 2002), and district courts cannot refuse to apply the Guidelines based on concerns that their use "offends plain fairness and does not produce justice," CJRB31; <u>see</u> <u>United States v. Napolitan</u>, 762 F.3d 297, 312-13 (3d Cir. 2014); <u>United States v. Gonzalez</u>, 462 F.3d 754, 755 (7th Cir. 2006).

Defendants also complain that sentencing them using the aggravated assault Guideline would constitute an impermissible "bait-and-switch" by "ask[ing] the jury

14

to find one offense and the Court to sentence for another." CJRB30-31, 39;

JJRB33-34.   But in choosing the appropriate offense Guideline, "the sentencing

judge should endeavor to locate the 'essence' of the defendant's conduct, not merely

the name attached to the statute violated." United States v. Serpico, 320 F.3d 691,

697 (7th Cir. 2003) (rejecting "bait-and-switch" argument).   Use of the aggravated

assault Guideline does *not* require conviction for aggravated assault, nor does it

mean that Defendants were convicted of one offense and sentenced for another. See

Rakes, 510 F.3d at 1290; United States v. Rahman, 189 F.3d 88, 152-53 (2d Cir.

1999); United States v. Nichols, 169 F.3d 1255, 1276 n.7 (10th Cir. 1999).   Rather,

the Guidelines channel sentencing discretion, Grier, 475 F.3d at 564-65—and the

aggravated assault Guideline is to be used where defendants' "conduct constituted

aggravated assault," even if they were convicted of different or lesser offenses,

U.S.S.G. §§ 2A2.3(c)(1), 2A2.4(c)(1); see also U.S.S.G. § 2K2.1(c)(1); cf.

§ 3A1.2(c).   There is nothing impermissible about that. United States v. Williams,

260 Fed. Appx. 444, 446-47 (3d Cir. 2008) (non-precedential); see United States v.

Dawn, 129 F.3d 878, 883-84 (7th Cir. 1997) ("[T]aking into account conduct related

to the offense of conviction in sentencing is not the same thing as holding the

defendant criminally culpable for that conduct."); see also United States v. Freeman,

763 F.3d 322, 335-36 (3d Cir. 2014); United States v. Gamez, 301 F.3d 1138,

1149-50 (9th Cir. 2002).

15

## C.    The Error Was Not Harmless.

Finally, Defendants argue that this error was harmless. CJRB49.   Not so.
Use of an incorrect Guidelines range, standing alone, is generally enough for the
contesting party to show *plain error*. <u>Molina-Martinez v. United States</u>, 136 S. Ct.
1338, 1345-49 (2016).   Here, the Government preserved its objection, meaning that
Defendants bear the burden of showing harmlessness—a burden that is extremely
difficult "absent a clear statement" by the sentencing court that "the same sentence
would have been imposed" absent the error. <u>United States v. Zabielski</u>, 711 F.3d
381, 387 (3d Cir. 2013).   Even then, the error is still not harmless "unless the
'alternative sentence' was, itself, the product of the three step sentencing process."
<u>United States v. Wright</u>, 642 F.3d 148, 154 n.6 (3d Cir. 2011).   But here, the Court
did not calculate the Guidelines range using the assault Guidelines, and therefore did
not explain why such massive variances—over *15½ years*—were warranted.

Defendants' only argument is that the Guidelines range was irrelevant
because the Court was "anchored to the ACA's concept of 'like punishment'" and
therefore the sentences "would have remained unchanged." CJRB49.   Defendants'
reading of ACA is wrong. <u>See</u> **Point III**.   ACA does not trump the Guidelines or
§ 3553(a) factors.   Like all other cases, the Court was required "to calculate
accurately the applicable guideline range," <u>Boney</u>, 769 F.3d at 159, and its failure to

do so was significant procedural error requiring reversal, <u>Molina-Martinez</u>, 136 S.

Ct. at 1345-46.

**POINT II**

**DEFENDANTS CANNOT DEFEND THE COURT'S REFUSAL TO FIND AGGRAVATING FACTS BY A PREPONDERANCE.**

Defendants agree that the District Court refused to find aggravating facts at sentencing by a preponderance of the evidence. CJRB41; see GB42-46.   They try to justify that refusal in two ways: (1) factfinding at sentencing is unconstitutional, CJRB36-41; and (2) no factfinding was necessary because there was no sufficiently analogous offense Guideline, JJRB30-35.   They are wrong.

Defendants' constitutional argument is "frivolous." United States v. Rivera-Cruz, 401 Fed. Appx. 677, 679-80 (3d Cir. 2010) (non-precedential). Sentencing courts must find facts by a preponderance, United States v. Ali, 508 F.3d 136, 144-56 (3d Cir. 2007), and can do so as long as the facts are not elements of the offense, which are "those facts that increase the maximum [or minimum] statutory punishment to which the defendant is exposed," United States v. Smith, 751 F.3d 107, 117 (3d Cir. 2014).   Indeed, that was the whole point of the remedial opinion in Booker—under an advisory Guidelines regime, courts do not run afoul of the Constitution by finding facts "that only enhance sentences within the range allowed by the jury's verdict." United States v. Tidwell, 521 F.3d 236, 250 n.9 (3d Cir. 2008); see Grier, 475 F.3d at 561-66.   The jury verdicts here exposed Defendants to 10 years' imprisonment per count, meaning that Carolyn and John could be sentenced to 120 and 100 years, respectively. GB45-46.   Facts about the severity of

the injuries or use of a weapon do not change those statutory sentences, and therefore were unquestionably *not* elements of these offenses.   That findings regarding those facts may have led the sentencing court "to select sentences that are more severe than the ones [it] would have selected without those facts" has no constitutional significance. Alleyne v. United States, 133 S. Ct. 2151, 2161 n.2, 2163 (2013); see Hoffecker, 530 F.3d at 196-97.

Defendants nonetheless contend that "facts such as the severity of an injury to the victim or whether a dangerous weapon was used, have traditionally been recognized to be elements of the offense" and therefore "[b]efore these facts can be used to effect a defendant's sentence, they must be found by a jury beyond a reasonable doubt." CJRB37-38.   But the question is whether those facts are elements of the *counts of conviction*.   They are not, and therefore Defendants' argument is meritless.   In fact, this Court rejected a similar argument in Grier, explaining that a sentencing court properly found by a preponderance that the defendant committed an entirely separate uncharged offense—an aggravated assault under state law. Grier, 475 F.3d at 565-68.[11]

---

[11] Defendants rely on Jones v. United States, 526 U.S. 227 (1999), and United States v. Lewis, 802 F.3d 449 (3d Cir. 2015) (en banc). CJRB36-39.   In Grier, this Court explained why reliance on Jones was misplaced, Grier, 475 F.3d at 566-67, and Lewis is easily distinguishable—there, the fact was an element of the offense, and it had not been charged in the indictment or found by the jury.

Defendants also are wrong that the Court could avoid making findings simply because it was not applying the Guidelines. JJRB30-35.   According to Defendants, where the Guidelines do not apply, sentencing courts can refuse to make fact findings.   Not so.

Even if the Court properly refused to apply the Guidelines, there were numerous important aggravating facts that the Court refused to consider, including: the degree of harm Defendants' inflicted; the victims' vulnerability; and Defendants' use of weapons, lies, and role in Joshua's death. GB44-46.[12] Defendants cannot explain how those facts were anything but highly relevant to several § 3553(a) factors. See U.S.S.G. § 2X5.1 background ("[T]he provisions of 18 U.S.C. § 3553 control."); United States v. Overstreet, 713 F.3d 627, 637-38 (11th Cir. 2013) (murder was "directly germane to several § 3553(a) factors"). Moreover, "[i]n the absence of an applicable sentencing guideline . . . the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the

---

[12] There is nothing "audaci[ous]" about arguing that Defendants contributed to Joshua's death. CJRB7.   Reading the trial transcript and reviewing the evidence, Defendants' role becomes readily apparent.   That the Court excluded reference to Joshua's death at trial does not mean that it never happened or that Defendants bear no responsibility.

applicable policy statements of the Sentencing Commission." 18 U.S.C.

§ 3553(b)(1).[13]   The aggravating facts were relevant to that analysis as well.

Nor can Defendants justify the basis for the refusal to consider aggravating

facts.   The Court unambiguously refused to make findings regarding any of these

issues because the jury did not find them and they were supposedly not "shown

beyond a reasonable doubt." GB42-43.   That, however, is the wrong standard, at

any stage of the sentencing process. See Ali, 508 F.3d at 144-56; see also U.S.S.G.

§ 6A1.3; United States v. Klups, 514 F.3d 532, 537-38 (6th Cir. 2008).

Nor can Defendants justify the Court's selective unwillingness to find facts.

After all, the Court found *mitigating facts*, even though none of them was found by

the jury or proven beyond a reasonable doubt. GB46.   But "what is good for the

goose is good for the gander," and the Court therefore erred by refusing to make

findings regarding aggravating facts by a preponderance of the evidence. United

States v. Arroyo-Jaimes, 608 Fed. Appx. 843, 847-49 (11th Cir. 2015)

(unpublished).

---

[13]   Although Booker excised the mandatory aspects of § 3553(b)(1), 543 U.S. at
245, this provision has nothing to do with mandatory sentencing and has been cited
post-Booker, e.g., United States v. Passarella, 460 Fed. Appx. 145, 148 (3d Cir.
2012) (non-precedential); Navarro, 289 Fed. Appx. at 725.

## POINT III

### ACA IS NOT A LICENSE TO IGNORE THE GUIDELINES OR FEDERAL SENTENCING POLICIES.

The Government argued that the Court misinterpreted ACA by focusing on state sentencing policies while ignoring or downplaying federal ones. GB47-53. Defendants go further, claiming that ACA *obliged* the Court to do so, because its "like punishment" provision trumps the Guidelines and § 3553(a) factors. CJRB14-18, 24-25, 41-48; JJRB36-41.

The parties agree that under ACA, a federal court cannot impose a sentence outside the statutory minimum or maximum provided by the assimilated state statute. GB47-48; JJRB37-38.   Defendants, however, argue that the "like punishment" provision goes much further, mandating that "[t]he period of time for which the defendant is to be incarcerated should be roughly equivalent to that which would be imposed in the state system," taking into account "the 'real time' of a state sentence." CJRB47.   According to Defendants, federal sentencing courts must ignore the Guidelines and § 3553(a) factors when they recommend a sentence that is within the statutory range but is longer than that which would likely be *served* in the state. CJRB14-18, 24 ("[T]he Guidelines sentence urged by the Government would

violate the ACA's mandate of imposing 'like punishment.'"), 41-48; JJRB41

("avoiding unwarranted disparities" "is not" a "legitimate consideration").[14]

In support, Defendants cite a series of cases having nothing to do with ACA

*sentencing*. E.g., United States v. Sharpnack, 355 U.S. 286 (1958); United States v.

Reed, 734 F.3d 881 (9th Cir. 2013); United States v. Dotson, 615 F.3d 1162 (9th Cir.

2010); United States v. Sain, 795 F.2d 888 (10th Cir. 1986).   Many of the

sentencing cases they do cite invoke a version of the statute superseded in *1909*,

which required "same punishment," not "like punishment" as the current version.

---

[14] Defendants' extended discussion of New Jersey sentencing law, CJRB14-18, 44-48, is of limited relevance and misleading.   Under New Jersey law, "there can be no free crimes in a system for which the punishment shall fit the crime," State v. Yarbough, 100 N.J. 627, 643 (1985), and therefore "crimes involving multiple victims represent an especially suitable circumstance for the imposition of consecutive sentences," State v. Molina, 168 N.J. 436, 442 (2001); see GB46 n.21. Thus, recently, a New Jersey Superior Court Judge on "Market Street" in Newark, A6675, imposed a 25-year sentence on a mother for the manslaughter of her daughter, and *two 10-year consecutive sentences* for the endangerment of her other two children, both of whom were significantly older than J██ and C██. State v. Rezireksyon, No. 11-003445 (Essex County); see http://www.nj.com/essex/index. ssf/2016/07/hold_do_not_publish_mom_given_xx_sentence_for_kill.html. Moreover, contrary to Defendants' rosy parole projections, New Jersey law permits courts to impose periods of parole ineligibility where they are "clearly convinced that the aggravating factors substantially outweigh the mitigating factors." N.J.S.A. 2C:43-6(b); see State v. Abdullah, 184 N.J. 497, 508-12 (2005).   Defendants' representation, therefore, that their crimes would have assuredly led to short periods of incarceration in state court is wrong.   Finally, the Government did *not* "concede[] that New Jersey law permits" John's probationary sentence. JJRB38 n.10.   Rather, the Government acknowledged that courts can theoretically impose probation for second-degree crimes, but that the "truly extraordinary and unanticipated circumstances" that would justify such lenience "were not present here." GB50 n.23.

Compare Press Publ'g Co., 219 U.S. at 8, with 18 U.S.C. § 13(a); see Gaskell, 134

F.3d at 1042 n.5; United States v. Davis, 845 F.2d 94, 99 (5th Cir. 1988).   And they

rely heavily on United States v. Martinez, 274 F.3d 897 (5th Cir. 2001), and United

States v. King, 824 F.2d 313 (4th Cir. 1987), which stand for the unremarkable (and

uncontested) proposition that courts cannot impose sentences greater than the

maximum allowed under state law. GB53 n.24.

    Although the cases Defendants cite do not support their position, the sources

they ignore eviscerate it.   Contrary to Defendants' suggestion, "Congress' intent as

embodied in the ACA" is crystal-clear and has nothing to do with replicating state

sentences at the expense of the Guidelines and federal sentencing policies. JJRB37

n.9.   In 1990, Congress amended 18 U.S.C. § 3551, providing that defendants

convicted under ACA "shall be sentenced in accordance" with the Sentencing

Reform Act, including the federal sentencing guidelines. § 3551(a); see Pub. L. No.

101-647, § 1602, 104 Stat. 4789, 4843 (1990).   That amendment definitively

"resolved this issue," by mandating application of the "sentencing guidelines to

convictions under" ACA. U.S.S.G. app. C, amend. 412 (Nov. 1, 1991).

Unsurprisingly then, in United States v. Queensborough, 227 F.3d 149, 160 (3d Cir.

2000), this Court held that "state law sets the minimum and maximum punishment

while the federal sentencing guidelines should be used to determine the actual

sentence within that range"—indeed, courts are "required to determine the actual

sentence using the federal sentencing guidelines." Defendants' failure to cite § 3551 or <u>Queensborough</u> speaks volumes.

To be sure, as the Government conceded, GB52, following <u>Booker</u> courts likely can consider what sentence a defendant would receive in the state. But that is a feature of post-<u>Booker</u> sentencing, not ACA. Thus, as in all sentencings, the court would need to explain why a variance was warranted on that basis in light of the § 3553(a) factors, including the Guidelines and the risk of creating unwarranted disparities. <u>United States v. Begin</u>, 696 F.3d 405, 412-13 (3d Cir. 2012). And because imposing a sentence consistent with one that would be served in the state is contrary to congressional policy, a particularly thorough explanation is necessary. <u>See</u> generally <u>United States v. Merced</u>, 603 F.3d 203, 218-22 (3d Cir. 2010). Simply put, because the Court's "duty" is to impose sentence consistent with *federal* sentencing policies and § 3553(a), it cannot, as it did here, ignore those policies in order to "replicate" what *might* have happened in state court. CJRB47-48; JJRB58.

25

**POINT IV**

**SENTENCES OF 24 MONTHS AND PROBATION ARE UNREASONABLE.**

The sentences imposed were unreasonably low: they rested on a view of the evidence rejected by the jury and failed to adequately account for numerous § 3553(a) factors. GB54-75.   Defendants counter with four arguments: the Government is pressing the wrong standard of review; the Court considered the various factors; the Court did not undermine the jury's verdict; and this was not a particularly serious offense. CJRB50-62; JJRB42-58.   They are wrong in every respect.

*First*, Defendants contend that, if no Guideline applies, this Court should use a "plainly unreasonable" standard of review. JJRB42-43; CJRB25.[15]   That argument is foreclosed by this Court's precedent.   The typical case in which there is "no sentencing guideline," 18 U.S.C. § 3742(b)(4), is for a sentence imposed for a violation of supervised release, Booker, 543 U.S. at 262.   But this Court has already held that such cases are governed by the same reasonableness standard that applies to all sentencing appeals. United States v. Bungar, 478 F.3d 540, 542 (3d Cir. 2007).

---

[15]  If there is a sufficiently analogous Guideline, Defendants urge this Court to remand without reaching this issue or others raised in this appeal. JJRB30, 43.   This Court should reject that invitation.   Resentencing can only proceed properly if the District Court knows that it must find facts by a preponderance and focus on federal sentencing policies, and that the vacated sentences were too low. E.g., United States v. Goff, 501 F.3d 250, 257-62 (3d Cir. 2007).

*Second*, Defendants claim that the Court considered various § 3553(a) factors and knew the case well. E.g., CJRB8-11, 50-51, 54-58; JJRB44, 51-57.   But the question on substantive unreasonableness review is not whether the Court discussed the § 3553(a) factors or knew the record, but whether its sentence "adequately [took] account" of those factors, United States v. Lychock, 578 F.3d 214, 220-21 (3d Cir. 2009), "in light of the facts and circumstances revealed in the record," Goff, 501 F.3d at 262.   Thus, this Court must decide whether a "reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).   Here, no reasonable sentencing court would have given sentences of 24 months and probation for parents who: beat and starved three separate adopted children over a 5-year period, contributing to one's death and causing the near-death of another as well as a litany of serious injuries; lied about their conduct and covered up their abuse; and caused lasting physical, psychological, and developmental injuries to the surviving children.[16]

---

[16] Defendants attack the veracity of many of the Government's assertions, including that they lied to obtain custody of the children and caused them to suffer broken bones, charging that the Government made them "out of whole cloth." CJRB8, 52-53, 61.   The Government's brief, however, is filled with citations to the record, which support each of the Government's assertions, including those. See GB5-6, 8, 11-14 (providing references to record).

*Third*, Defendants claim that the Court did not undermine the jury's verdict because it recognized that a crime had been committed and the jury was "never asked to resolve [the parties'] conflicting narratives." CJRB6, 56-58; JJRB44-47.[17] But there was a 39-day trial for a reason—the Government presented evidence showing that Defendants beat and starved their children, causing the numerous injuries and stagnant growth.   Defendants maintained that J███ lied about the abuse, the various injuries were not caused by them, the treating physicians did not suspect abuse, and the Government's case was simply "Monday morning quarterbacking."[18]

Obviously, in convicting Defendants of a 5-year-long conspiracy and numerous substantive counts, the jury rejected Defendants' theories.   It is difficult to fathom how the jury could have done so without crediting J███'s testimony or

---

[17] Defendants present snippets of testimony from the first trial, passing them off as exculpatory. CJRB4, 10.   Of course, if that testimony truly was exculpatory, Defendants would have called those witnesses during the second trial.   Carolyn also "incorporate[s] by reference" pages from her sentencing memorandum. CJRB22. That is "inappropriate" and borderline "sanction[able.]" <u>Prudential Ins. Co. v. Sipula</u>, 776 F.2d 157, 161 n.1 (7th Cir. 1985).

[18] Defendants defend their treatment of J███, claiming that the evidence shows that he is a liar.   The jury and a state court judge disagreed. GB71 n.33.   And for good reason.   The bulk of "lies" that Defendants have repeatedly trumpeted were childhood fibs about not doing homework or staying up too late. A2174-89, 2246-50, 2458-62.   And J███ admitted that he lied to a judge—he was scared that disclosing the abuse would lead to yet more abuse at Defendants' hands. A2170-74, 2462-71; <u>see</u> A1886-89.

28

that of the Government's experts, or drawing a connection between Defendants'
conduct and the conditions of the children. GB60-62, 71 n.33.   By rejecting
J█████'s testimony, refusing to find that Defendants caused the children's injuries,
opining that no monstrosities had been committed and no treating physicians found
abuse, and finding that John merely "watched" and "tolerated" the abuse, the Court
improperly undermined the jury's verdict at nearly every turn. GB57-64.

*Fourth*, like the District Court, Defendants are "unwilling[] to directly
confront the nature of [their] individual conduct." <u>United States v. Robinson</u>, 778
F.3d 515, 519-20 (6th Cir. 2015).   For example, Defendants complain that this
really was not a "serious offense" at all, because it could have been charged as a
fourth-degree crime. CJRB14, 56.   That a less serious offense could have been
charged is irrelevant—that is frequently the case. <u>See</u> <u>United States v. Batchelder</u>,
442 U.S. 114, 123-25 (1979).   The New Jersey legislature determined that this
conduct constituted a second-degree offense, and the Government thought it was
serious enough to justify that treatment.   The trial record and evidence
overwhelmingly support that decision.

* * *

Defendants' arguments only highlight the problem here—both Defendants
and the District Court think this case was about "mistaken" parenting and continue
to believe that "society as a whole was not harmed" by their conduct. GB57-59,

64-65; <u>see</u> CJRB57; JJRB55; A6731.[19]    The trial testimony, pictures of the

children, growth charts, and evidence of ongoing injuries and issues eviscerate this

contention. <u>E.g.</u>, A6747-88.

Defendants had good educations.    They won awards.    They had friends.

They seemed to care about their adopted children.    Doctors, therefore, gave them

the benefit of the doubt—with disastrous consequences. <u>E.g.</u>, A607-09.    Despite the

overwhelming evidence of abuse and neglect, including the horrific photographs and

stunning growth charts, the Court gave them the same benefits, based on the respect

they showed their lawyers and the way they acted in court.    As the evidence clearly

showed, however, this was truly "a torture case of 3 children." A6360.    Faced with

that mountain of evidence—which was sadly unavailable to those who could have

stopped this abuse and neglect earlier—no reasonable sentencing court would have

imposed sentences of probation and 24 months for the reasons the Court provided.

---

[19] Defendants' assertion that the Court made this comment solely in connection
with protection of the public is wrong. JJRB55.    "Protection of the public" was last
discussed four transcript pages earlier, and the Court thereafter engaged in a
wide-ranging critique of the Government's sentencing
recommendation—comparing it to a football game and stating that the Government
needed to "give everybody a break" and "get real." A6728-31.

30

## <u>CONCLUSION</u>

For all of these reasons and those in the opening brief, this Court should

vacate the judgments and remand for resentencing.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney


By:  s/ JOHN F. ROMANO
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ   07102-2535
(973) 645-2866


Date:   November 22, 2016

# CERTIFICATE OF COMPLIANCE

I hereby certify that I am an Assistant United States Attorney for the District of New Jersey, that I am filing the attached Corrected Reply Brief for Appellant, and:

(1) this brief contains 7000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and thus does not exceed the 7000-word limit;

(2) this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because it has been prepared using a Microsoft WORD 2010 word-processing system and it is in a proportionally-spaced typeface, namely Times New Roman, that is at least 14 points;

(3) the text of the electronic PDF brief is identical to the text of the paper copies of the brief and appendix; and

(4) The electronic PDF brief has been prepared on a computer that is automatically protected by a virus detection program, namely a continuously-updated version of Trend Micro OfficeScan, and no virus was detected.

_____

By: s/ John F. Romano
Assistant U.S. Attorney

Dated:   November 22, 2016

## CERTIFICATION OF FILING AND SERVICE

I hereby certify that on November 22, 2016, I caused the Corrected Reply Brief for Appellant to be filed with the Clerk of this Court by (a) electronic filing in the PDF form using the Circuit's electronic filing system, and (b) paper filing of an original and six paper copies using postage-prepaid first-class mail.

I also certify that on November 22, 2016, I caused the Corrected Reply Brief for Appellant to be served:

[X] by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, on the following Filing Users:

Rubin M. Sinins, Esq.
rsinins@jawjw.com

Carol Gillen, AFPD
Carol_Gillen@fd.org

_____
s/ John F. Romano
Assistant U.S. Attorney

Dated: November 22, 2016